[No. 19070.   Department Two.   July 18, 1925.]

PUGET SOUND MACHINERY DEPOT, *Appellant*, v.
FRANK O. GRANSTON *et al.*, *Respondents*.[1]

CONTRACTS (87)—BUILDING CONTRACTS—SPECIFICATIONS AND PLANS
—CONSTRUCTION. A contract for a school building requiring boilers
built for a working pressure of one hundred and twenty-five pounds
is not a compliance with a requirement for equipment conforming
to plans and specifications referring to local ordinances prohibiting
the use of boilers exerting one hundred and twenty-five pounds pres-
sure, under which the engineer and inspector required equipment
to operate at a pressure not exceeding twenty pounds.

COSTS (61)—ON APPEAL—PREVAILING PARTY. The fact that a
school district withheld from a contractor more than the cost of
making changes, which the contractor wrongfully refused to make,
does not make the contractor the "prevailing" party on the appeal,
sustaining the district's right to the cost of the changes, which was
all the district claimed and payment of which would have adjusted
the matter without suit.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered February 14, 1924,
upon findings in favor of the defendants, in an action
to foreclose a mechanics' lien, tried to the court. Af-
firmed.

*Bronson, Robinson & Jones* and *W. L. Grill*, for ap-
pellant.

*Bausman, Oldham & Eggerman* and *Arthur E.
Simon*, for respondents.

FULLERTON, J.—On July 12, 1921, the respondents,
Granston, entered into a contract with School District
No. 1, King county, whereby they agreed to furnish
the necessary materials and install the heating plant
in a school building which the school district was then
constructing. The contract provided that the plant
should conform to plans and specifications furnished

[1]Reported in 237 Pac. 1008.

by the district. These plans and specifications are minute in their details and cover the plant as a whole. The parts applicable to the present controversy are these:

"The plans and specifications for the heating and ventilating work in the Main Street School were prepared under the direction of W. R. McNeal, Engineer, Seattle School District No. 1, and wherever the word 'Engineer' is mentioned in these specifications, or wherever the word 'Architect' is mentioned in that portion of the specifications entitled 'General Conditions' it shall be understood that W. R. McNeal is referred to. The Engineer will interpret all questions and will have full charge of any matters that may affect the work under this contract. . . . Attention is called to the fact that articles which the bidder proposes to furnish must be approved by the Engineer as all decisions as to quality and suitability rest with the Engineer and not with the bidder. . . . This Contractor shall furnish and install two 100 H. P. 66 inch by 16 feet horizontal return tubular or two 100 H. P. Liberty water tube boilers, or equal, with brick setting and full flush cast iron fronts. These boilers shall be designed to operate at 125 pounds working pressure. Return tubular boilers shall not have less than 1080 square feet of heating surface, and not less than 27.5 square feet of grate surface. Water tube boilers shall not have less than 1155 square feet of heating surface and not less than 50 square feet of grate surface. Boilers shall conform to local Ordinances and to the A. S. M. E. [The American Society of Mechanical Engineers] Code for boilers, as revised for 1918 Edition. . . . Each boiler shall be equipped with the usual trimmings, including steam gauge, water column, pop safety valves, blow-off valve and cock, manholes and suitable blow-off and boiler feed connections, etc. . . . Pop safety valves shall be of the twin pattern type and the capacity shall be such as to conform to the A. S. M. E. Code. . . . All fittings shall be standard, cast iron fittings free from all imperfections and shall be for 125 pounds steam working pressure. . . . This

Contractor shall furnish and install a Nash Engineering Company's Jennings return line vacuum and low pressure boiler feed pumping set, or equal. This pumping set shall be a single unit designed for continuous operation and shall consist of one size 'C' pump, capable of handling 26,000 square feet of direct cast iron radiation, maintaining a vacuum of 10 inches of mercury and discharging against a pressure of 20 pounds."

The respondents elected to install the "horizontal return tubular" boilers mentioned in the specifications, and contracted to purchase them from the appellant, Puget Sound Machinery Depot. The contract was in form a proposal and acceptance, and in the proposal the boilers were described as "Two—66" x 16' Horizontal Return Tubular Boilers built for 125 pound working pressure, A. S. M. E. code, complete with all castings, trimmings and suspension, in accordance with plans and specifications of Seattle School Board for Main Street School." The boilers as furnished were equipped with pop safety valves designed to operate at 125 pounds pressure, a pressure too great to operate with safety in connection with other parts of the heating plant. While they were approved otherwise by both the engineer of the school district and the inspector under the local ordinances operative at the place where the school building was being constructed, these authorities refused to permit their operation until they should be equipped with pop safety valves designed to operate at a working pressure not in excess of 20 pounds. The respondents called the attention of the appellant to this requirement of the engineer and the inspector, and requested it to make the necessary change. This the appellant refused, contending that the boilers as furnished complied with their contract. The respondents thereupon made the necessary changes at a cost to themselves of $176.14.

In the meantime the city withheld from the contract price due the respondents the sum of $300, and the respondents withheld a like sum from the appellant. The appellant thereupon filed a notice of lien against the school district and the bondsman of the respondents, claiming a balance of $300 to be due under its contract. Subsequently it instituted the present action to enforce the lien. The appellant made parties to its action only the respondents and their bondsman. On their appearance in the action, the respondents caused the school district to be made a party. The district then appeared and admitted a balance due on the contract and paid the money into court. The contest was thereafter waged between the respondents and the appellant over the liability of the appellant to answer for the cost of changing the valves. The court determined the issue in favor of the respondents, and in its decree directed that the respondents be paid out of the money deposited the sum of $176.14, with their costs of suit, and that the remainder be paid to the appellant. It is from this decree that the appeal is prosecuted.

The appellant's contention is that its contract with the respondents required it to furnish boilers equipped with pop safety valves designed to operate at 125 pounds working pressure, and that since it furnished boilers so equipped, it is entitled to recover as against the respondents, regardless of the question whether the equipment satisfied the requirements of the school district or the local ordinances. But we think this a misinterpretation of its contract. It is true that it agreed to furnish boilers "built for 125 pounds working pressure," but it also agreed to furnish them "complete with all castings, trimmings and suspension, in accordance with plans and specifications of Seattle School Board for Main Street School." This latter clause was as much a part of the contract and as much obligatory

upon the appellant as was the first, and it had no right to assume that because the boilers were to be built for a working pressure of 125 pounds they must necessarily be equipped so as to operate at that pressure. It was its duty to inquire as to the nature of this equipment and conform the equipment to the requirements found to be necessary from the inquiry.

But the appellant cites the quoted portions of the specifications wherein the operating pressure is specifically stated, and argues that these gave it no notice that the boilers were to be operated at a less pressure. If these contained all of the specifications on the subject there would be some justification for the contention. But others of the quoted portions plainly indicate that something else was meant. The specifications refer to local ordinances. Had these been examined it would have been learned that under no circumstances would a boiler exerting 125 pounds steam pressure be permitted to be used in a school building. An examination of the specifications as a whole, moreover, would have shown that the balance of the heating plant was not designed to withstand a pressure as great as 125 pounds. Seemingly, these matters, even if they do not of themselves show what was intended, at least rendered the contract obscure, making it the duty of the appellant to inquire as to its meaning of the arbiter appointed in the specifications to determine all disputed questions which would affect the work under the contract. Inquiry would have disclosed the true intent, and, in our opinion, the appellant was at fault in not making it. It must, therefore, bear the loss caused thereby.

The appellant further complains that the court erred in refusing to allow it to recover its costs. But we find no error in this. The code allows costs to the prevailing party or parties, and on the single issue in dispute

the respondents were the prevailing parties. We have not overlooked the appellant's argument to the effect that more of the balance of the contract price was withheld than was finally found to be due, and that the appellant was the prevailing party to the extent of this difference. But doubtless the trial court felt, as we feel, that suit was unnecessary to recover this balance. All that the respondents ever claimed was the cost of making the necessary changes in the pop safety valves, and this would have been at once adjusted had there been no dispute as to the liability therefor. In causes of equitable cognizance, the allowance of costs is largely within the discretion of the trial court, and, if it needs be so, the award in this instance can rest on the discretionary powers of the court.

The decree is affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MACKINTOSH, JJ., concur.